[No. H007577. Sixth Dist. Oct. 1, 1991.]

GLENN BISHOP, Plaintiff and Appellant, v.
ED SILVA et al., Defendants and Respondents.

## COUNSEL

David M. Masters for Plaintiff and Appellant.

Holbrook & Lankes and Stephen A. Lankes for Defendants and Respondents.

## OPINION

ELIA, J.—Plaintiff brought a third party tort action for injuries sustained during the course and scope of his employment. The workers' compensation carrier for plaintiff's employer intervened. When plaintiff's suit was dismissed under Code of Civil Procedure section 583.250[1] for failure to effect timely service under section 583.210, plaintiff sought unsuccessfully to intervene back into the lawsuit pursuant to Labor Code section 3853.

Plaintiff appeals from the dismissal of his action and the denial of his motion for leave to intervene. We affirm as to both.

### FACTUAL AND PROCEDURAL BACKGROUND

In May 1986, while employed by Coast Express, Inc., plaintiff Glenn Bishop was supervising the loading of his tractor trailer at a terminal maintained by Silva Harvesting. Plaintiff was injured when he was struck from behind by a forklift operated by an employee of Silva Harvesting. Fairmont Insurance Co., the workers' compensation carrier for Coast Express, paid plaintiff medical and disability benefits.

On March 12, 1987, plaintiff sued Silva Harvesting and Ed Silva, individually and doing business as Silva Harvesting (hereafter referred to collectively as Silva), and several Doe defendants. A summons issued the same day.

Plaintiff alleges that, on April 8, 1987, his counsel provided Silva with a courtesy copy of the summons and complaint.

On July 23, 1987, Fairmont Insurance filed a complaint in intervention.

On February 20, 1990, plaintiff served Diane Johnson, described on the proof of service as "staff" at Silva's office in Gonzales, California. The record contains conflicting copies of the proof of service. Both indicate the summons was served. One shows that the complaint was also served, while the other that it was not.

---

[1]Unless otherwise indicated, all further statutory references are to the California Code of Civil Procedure.

Plaintiff alleges that, on March 9, 1990, his counsel contacted the intervener's attorney and the process server to confirm service and return of summons. Counsel was advised that service had been effected and that proof of service would be forwarded.

On March 12, 1990, the three-year period under section 583.210, subdivision (a), expired. The statute provides: "The summons and complaint shall be served upon a defendant within three years after the action is commenced against the defendant. For the purpose of this subdivision an action is commenced at the time the complaint is filed."

Plaintiff alleges that, on March 19, 1990, his counsel received a copy of the proof of service from the process server but no summons. Counsel contacted the process server in an effort to retrieve the original summons. The process server said that all documents had been sent to the intervener's attorney. But the intervener's attorney reported she had not received the original summons.

On May 11, 1990, the 60-day period under section 583.210, subdivision (b), expired. The statute provides: "Return of summons or other proof of service shall be made within 60 days after the time the summons and complaint must be served upon a defendant."

Plaintiff alleges that, on June 11, 1990, his counsel received from intervener's attorney the original proof of service and a photocopy of the summons. The intervener's attorney again reported she was unable to locate the original summons.

On July 3, 1990, Silva moved to quash service and for mandatory dismissal of the action under section 583.250[2] because plaintiff had not effected return of summons or other proof of service within three years and sixty days after the action was commenced.

On July 13, 1990, plaintiff filed the original proof of service and a photocopy of the summons, along with a declaration stating that the original summons had been lost or destroyed.

On July 20, 1990, the trial court granted Silva's motion to quash service and to dismiss plaintiff's suit. The same day, plaintiff sought leave to

---

[2]Section 583.250 states as follows: "(a) If service is not made in an action within the time prescribed in this article: (1) The action shall not be further prosecuted and no further proceedings shall be held in the action. (2) The action shall be dismissed by the court on its own motion or on motion of any person interested in the action, whether named as a party or not, after notice to the parties. (b) The requirements of this article are mandatory and are not subject to extension, excuse, or exception except as expressly provided by statute."

intervene in the complaint in intervention filed by Fairmont Insurance. The trial court denied leave.

Plaintiff appeals. Plaintiff contends the trial court erred in granting Silva's motion to quash and dismiss and in denying plaintiff's motion for leave to intervene.

## DISCUSSION

*Motion to Quash and Dismiss*

Section 583.240 provides: "In computing the time within which service must be made pursuant to this article, there shall be excluded the time during which any of the following conditions existed: . . . (d) Service, for any other reason, was impossible, impracticable, or futile due to causes beyond the plaintiff's control. Failure to discover relevant facts or evidence is not a cause beyond the plaintiff's control for the purpose of this subdivision." Under section 583.110, subdivision (f), " '[s]ervice' includes return of summons."

■ Plaintiff argues that 85 days should be excluded from the computation of time for the return of summons in this case due to impossibility. According to plaintiff, "[t]he time excluded would have commenced on March 19, 1990, when [plaintiff's counsel] first learned that there may have been a problem with the Summons through June 11, 1990, when [plaintiff's counsel] was able to ascertain the status of the Summons." Plaintiff contends he reasonably relied upon state-registered process servers to return the original summons in a timely manner. He also argues that counsel diligently pursued the original summons. Moreover, Silva actually had notice of the lawsuit through courtesy copies of the summons and complaint delivered in April 1987 and through numerous communications thereafter. By plaintiff's calculation, the exclusion of 85 days would extend plaintiff's deadline from May 11 to August 4, 1990, and plaintiff met that deadline with his declaration of lost summons filed July 13, 1990.

Under *Hocharian v. Superior Court* (1981) 28 Cal.3d 714, 722 [170 Cal.Rptr. 790, 621 P.2d 829], reasonable diligence once excused plaintiff's failure to timely effect service under California law. But in 1982, the Legislature overruled *Hocharian* by incorporating language from *Ippolito v. Municipal Court* (1977) 67 Cal.App.3d 682, 687 [136 Cal.Rptr. 795], into then section 581a. In an amendment effective January 1, 1983, the Legislature added the requirement that any claimed impossibility, impracticability, or futility of service must be "due to causes beyond the plaintiff's control." Moreover, "[f]ailure to discover relevant facts or evidence is not a cause

beyond the plaintiff's control . . . ." (Former § 581a, subd. (f); now § 583.240, subd. (d); see *Dale* v. *ITT Life Ins. Corp.* (1989) 207 Cal.App.3d 495, 501-502 [255 Cal.Rptr. 8].)

The Law Revision Commission explained: "The excuse of impossibility, impracticability, or futility should be strictly construed in light of the need to give a defendant adequate notice of the action so that the defendant can take necessary steps to preserve evidence. Contrast Section 583.340 and Comment thereto (liberal construction of excuse for failure to bring to trial within a prescribed time). This difference in treatment is consistent with one aspect of the policy announced in Section 583.130—plaintiff must exercise diligence—and recognizes that service, unlike bringing to trial, is ordinarily within the control of the plaintiff. [17 Cal.L.Rev.Comm. Reports 905 (1984)]." (Cal. Law Revision Com. com., 16 West's Ann. Code Civ. Proc., § 583.240 (1991 pocket supp.) p. 47 [Deering's Ann. Code Civ. Proc., § 583.240 (1991 pocket supp.) p. 105].)

In this case, plaintiff's problems were within his own control. Plaintiff "selected and employed his own agent to effect service of process upon [Silva]. He is necessarily charged with notice of the acts and declarations of his agent." (*Ippolito* v. *Municipal Court, supra,* 67 Cal.App.3d at p. 687.) Plaintiff also selected and employed his own counsel to direct and oversee the activities of his process server. Even if reasonable diligence were still an excuse for tardy service, we would not find reasonable diligence here based on a few phone calls over several months in an effort to locate the original summons. And that brings us to a most perplexing question: Why was plaintiff's counsel so determined to locate the original summons that he allowed the deadline for return of summons to pass without action, although he knew there was a problem with the original summons almost two months before the deadline?

Section 583.210, subdivision (b), speaks of the "[r]eturn of summons *or other proof of service* . . . ." (Italics added.) Section 417.30, subdivision (b), provides: "If a summons is lost after service has been made but before it is returned, an affidavit of the person who made the service showing the time, place, and manner of service and facts showing that such service was made in accordance with this chapter may be returned with the same effect as if the summons itself were returned."

Plaintiff's counsel learned on March 19 that neither the process server nor intervenor's counsel had possession of the original summons. Counsel could have investigated the matter further and yet still had ample time to meet the May 11 deadline for return of summons simply by obtaining and filing an affidavit of the process server. Plaintiff's failure to do so does not render

timely service "impossible, impracticable, or futile due to causes beyond the plaintiff's control" under section 583.240, subdivision (d).

Alternatively, plaintiff contends his failure to effect timely service is excused because Silva had notice anyway. Indeed, plaintiff even "believes that the reason the original Summons was never located is that it may have been served upon [Silva] who then simply chose to wait for the statutory period to expire before bringing their Motion to Dismiss. If such is the case, then [Silva] should be estopped under 583.140 from this type of conduct and from bringing a Motion under 583.210 et. seq. for Dismissal." Plaintiff suggests not an iota of proof regarding Silva's retention of the original summons. In any event, plaintiff's suspicions would still not explain or excuse his failure to timely file an affidavit of the process server in lieu of the missing summons.

Nor does the fact that Silva may have had notice of the lawsuit through courtesy copies of the summons and complaint and through numerous communications excuse plaintiff's untimely service. Section 583.220 provides that "[t]he time within which service must be made pursuant to this article does not apply if the defendant enters into a stipulation in writing or does another act that constitutes a general appearance in the action." Plaintiff does not point to any act by Silva that would constitute a general appearance. The only filing by Silva contained in the record is the motion to quash and dismiss. Subdivision (b) of section 583.220 specifically provides that motions to quash and dismiss for untimely service do not constitute a general appearance.

The statute does not suggest that defendant's mere knowledge of the lawsuit renders the time requirements inapplicable. Some cases decided prior to the 1982 revisions of the service statutes suggest that actual knowledge is relevant. (See, e.g., *Hocharian v. Superior Court, supra,* 28 Cal.3d at pp. 724-725, fn. 10; *Torgersen v. Smith* (1979) 98 Cal.App.3d 948, 952 [159 Cal.Rptr. 781].) In *Torgersen,* the court relied upon language quoted with approval by the Supreme Court six years earlier in *Pasadena Medi-Center Associates v. Superior Court* (1973) 9 Cal.3d 773, 778 [108 Cal.Rptr. 828, 511 P.2d 1180]: "These sections are to be 'liberally construed to effectuate service and uphold jurisdiction of the court if actual notice has been received by the defendant, and in the last analysis the question of service should be resolved by considering each situation from a practical standpoint.' (Rep. of Judicial Council Special Committee on Jurisdiction, pp. 14, 15 . . . .)" (*Torgersen v. Smith, supra,* 98 Cal.App.3d at p. 952.) But with the 1982 changes, the Legislature unequivocally signaled that the service statutes are no longer to be "liberally construed." In fact, as quoted above, the Law Revision Commission stated that the excuses for noncompliance are to be

"strictly construed." The fact that Silva may have known of the lawsuit does not excuse plaintiff's failure to effect timely service.

*Motion for Leave to Intervene*

Labor Code section 3853 provides that when an action is brought against a third party tortfeasor "by either the employer or employee, the other may, at any time before trial on the facts, join as a party plaintiff or shall consolidate his action, if brought independently." "Employer" includes the employer's insurer. (Lab. Code, § 3850, subd. (b).)

■ Here, plaintiff employee initiated the lawsuit against the alleged third party tortfeasor, Silva. Pursuant to Labor Code section 3853, the employer's workers' compensation carrier, Fairmont Insurance, intervened. When plaintiff's action was dismissed for failure to effect timely service, he sought to intervene in Fairmont Insurance's complaint in intervention, contending he had an absolute right to do so under Labor Code section 3853. Plaintiff moved for leave to intervene three days short of three years after Fairmont Insurance intervened. Plaintiff contended that, by intervening, he still had time to effect timely service under the three-year and sixty-day provisions of section 583.210, subdivisions (a) and (b).

The trial court denied plaintiff leave to intervene, apparently concluding that the time limits governing plaintiff's service should not be measured from the date Fairmont Insurance intervened. Rather, the time limits governing plaintiff's service would still be calculated from the filing of the original complaint. Thus, intervention would not cure plaintiff's failure to effect timely service.

Plaintiff relies upon *Buell* v. *CBS, Inc.* (1982) 136 Cal.App.3d 823 [186 Cal.Rptr. 455] and *Johnson* v. *Haughton & Co.* (Cal.App.) Although plaintiff reports that the Supreme Court denied review in *Johnson*, plaintiff fails to note that the court also ordered the opinion depublished on October 20, 1988. (See Cal. Rules of Court, rule 979.) Thus, plaintiff's citation of and reliance upon *Johnson* is improper. (See Cal. Rules of Court, rule 977.)

The procedural history of *Buell* is virtually identical to the procedural history of this case. Plaintiff Buell sued CBS for injuries allegedly caused by CBS's negligence while she was on CBS's property. The workers' compensation carrier of Buell's employer intervened. The insurer served CBS; Buell did not. CBS moved to dismiss Buell's action under then section 581a for

failure to effect timely service. When the motion was granted, Buell sought leave to intervene in the insurer's action pursuant to Labor Code section 3853. The trial court denied Buell leave to intervene.

The court of appeal reversed. The court examined the legislative scheme that "authorizes the employee and employer to intervene in each other's actions, provides for mandatory consolidation of their lawsuits, allows the employer to sue for the employee's damages, and grants employee and employer the right to share in each other's judgment or settlement. [Citation.] The Supreme Court has held that the Legislature intended the actions to be so closely parallel to each other that '[s]ubstantively, as well as procedurally, employer and employee actions are interchangeable: regardless of who brings an action, it is essentially the same lawsuit.' [Citation.]" (*Buell v. CBS, Inc., supra*, 136 Cal.App.3d at pp. 825-826, fn. omitted.)

The *Buell* court also examined recent cases holding that employees and employers have a right to intervene in one another's lawsuits under Labor Code section 3853 although the one-year statute of limitations has run against the intervener. (*County of San Diego v. Sanfax Corp.* (1977) 19 Cal.3d 862, 885 [140 Cal.Rptr. 638, 568 P.2d 363]; *Jordan v. Superior Court* (1981) 116 Cal.App.3d 202, 208 [172 Cal.Rptr. 30].) The court of appeal saw "no distinction between the reasoning and result in *Jordan* and *Sanfax* and the [situation in *Buell*]. In both cases, the legislative intent to allow recovery of the totality of damages in one lawsuit would be defeated by permitting a limitations period to cut off the employee's right to intervene in the employer's diligently litigated action." (*Buell v. CBS, Inc., supra*, 136 Cal.App.3d at p. 826.)

Although the reasoning of *Buell* may have been sound at the time, we decline to follow it today. As noted above, the Legislature overhauled the service statutes in 1982, the same year *Buell* was decided. Rejecting the Supreme Court's indulgent approach in *Hocharian v. Superior Court, supra*, 28 Cal.3d 714, the Legislature adopted a rigid scheme, setting forth very limited exceptions to the time requirements for service and entirely excluding plaintiff's diligence from the equation. As we explained in *Chambers v. Santa Cruz City School Dist.* (1987) 193 Cal.App.3d 518, 522 [238 Cal.Rptr. 356], the purpose of the service statutes is "to move suits expeditiously towards trial and to promote trial before evidence is lost, destroyed or unavailable." Viewing this purpose as critical, the Legislature deemed application of the service statutes to be "mandatory." (Former § 581a, subd. (f), now § 583.250, subd. (b).)

Granted, the *Buell* decision rested not upon the liberal *Hocharian* approach to service but, rather, upon the Legislature's intention, in the words of the

*Buell* court, to create an "unconditional right to intervene" under Labor Code section 3853. (*Buell* v. *CBS, Inc., supra,* 136 Cal.App.3d at p. 826.) But we believe *Buell* must be examined today in light of the Legislature's dual intentions—to create a right to intervene under Labor Code section 3853 and, at the same time, to impose a stiff penalty upon those who fail to effect timely service.

The court in *State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co.* (1989) 210 Cal.App.3d 740 [258 Cal.Rptr. 545] also faced an apparent conflict between procedural deadlines and the employer's and employee's right to intervene under Labor Code section 3853. In *Selma,* the employer's workers' compensation carrier filed the initial action the day before the statute of limitations expired. The employee intervened almost three years later. Both the insurer and the employee effected service just before expiration of the time limit measured from the filing of the initial complaint. Almost four years and ten months after the filing of the initial complaint, defendants moved to dismiss for delay in prosecution under the three-year discretionary dismissal statute. (§§ 583.410, 583.420, subd. (a)(2)(A).) The trial court granted the motion, dismissing both the initial complaint and the complaint in intervention, the latter having been filed less than three years earlier.

The intervener employee argued on appeal that his time to bring the case to trial ran from the filing of his complaint in intervention and not from the filing of the initial complaint. The court of appeal disagreed. The court noted "the emphasis the cases have always placed on the obligation of a person who has a litigable claim to pursue the claim with alacrity and vigor and the strong public policy in favor of expediting and disposing of litigation." (*State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co., supra,* 210 Cal.App.3d at p. 754.) Moreover, "one of the purposes of intervention is to avoid delay." (*Ibid.*)

The *Selma* court concluded that "the provisions of Labor Code section 3853 . . . permitting the intervener to file a complaint in intervention 'at any time before the trial on the facts' do not qualify or eliminate intervener's obligation to pursue his claim diligently from the beginning. The strong public policy in favor of expediting the prosecution of claims still prevails. It operates as a limitation on the right of the intervenor to maintain the lawsuit. [¶] If the rule were otherwise, an intervener could wait until close to the end of the five-year mandatory dismissal statute as to the complaint to file his complaint-in-intervention and thereby extend the time in which defendants would be subject to litigation to 10 years." (*State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co., supra,* 210 Cal.App.3d at p. 755.)

The *Selma* court observed that since the complaint and the complaint in intervention under Labor Code section 3853 are viewed as "interchangeable" and "essentially the same lawsuit" (*County of San Diego* v. *Sanfax Corp.*, *supra*, 19 Cal.3d at p. 874), it makes sense to measure both the employer's and employee's diligence in prosecuting the action from the filing of the initial complaint. "[T]his rule gives effect to Labor Code section 3853, authorizing a complaint-in-intervention after the statute of limitations would have otherwise run, but holds the intervener's feet to the fire, so to speak, with respect to vigorous prosecution of his claim." (*State Compensation Ins. Fund* v. *Selma Trailer & Manufacturing Co.*, *supra*, 210 Cal.App.3d at p. 755.)

The rule we adopt today holds the initial litigant's feet to the fire: While we do not decide in this case when the service period for the initial intervenor, Fairmont Insurance, began to run, we do decide that an employer or employee who initiates the lawsuit, such as plaintiff here, cannot avoid the penalty for noncompliance with the mandatory service statutes by simply intervening back into the litigation and thereby benefitting from any extended service period available to the initial intervener.

Intervention is allowed under Labor Code section 3853 "at any time before trial on the facts . . ." and even beyond the one-year statute of limitations. (§ 340, subd. (3); *County of San Diego* v. *Sanfax Corp.*, *supra*, 19 Cal.3d at p. 885.) Nonetheless, we cannot believe the Legislature intended to reward an employer or employee whose action is subject to mandatory dismissal for failure to effect timely service by permitting him to intervene back into the very litigation he set in motion—at a time well after the statute of limitations has expired. We see no end to this procedural game, sometimes referred to as "leapfrog." (See, e.g., *Floyd Neal & Associates, Inc.* v. *Superior Court* (1977) 72 Cal.App.3d 734, 739 [140 Cal.Rptr. 301].) We envision the employer intervening into the employee's suit, the dismissed employee intervening back into the employer's suit, the dismissed employer reintervening back into the employee's suit, and so on. We do not believe this scenario carries out the Legislature's intent in enacting either the service statutes or Labor Code section 3853.

## DISPOSITION

The judgment of dismissal and the denial of plaintiff's motion for leave to intervene are affirmed.

Agliano, P. J., and Cottle, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 23, 1992. Mosk, J., was of the opinion that the petition should be granted.